**POLSINELLI LLP**
Todd M. Malynn (CA Bar No.181595 )
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
Telephone:   310.556.1801
Facsimile:    310.556.1802
Email:         tmalynn@polsinelli.com

*Attorneys for Plaintiffs*
HAND & NAIL HARMONY, INC.,
NAIL ALLIANCE, LLC and NAIL
ALLIANCE – ARTISTIC, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAND & NAIL HARMONY, INC., a California corporation, NAIL ALLIANCE, LLC, a Delaware corporation, and NAIL ALLIANCE – ARTISTIC, INC., a Delaware corporation,<br><br>            Plaintiffs,<br><br>      v.<br><br>TEXAS NAILS & BEAUTY SUPPLY, a Texas business entity; TONY LEE, an individual; DOOR TO DOOR NAIL SUPPLY, a California business entity; NAIL SUPPLY INC. a New York business entity; SALON SUPPLY STORE, a Florida limited liability company, and DOES 1through 30, inclusive,<br><br>            Defendants. | Case No. 8:15-cv-02105-CJC-JCG<br><br>Date: ~~May 30~~ June 6, 2016<br>Time:  1:30 pm<br>Ctrm:  9b<br><br>**NOTICE OF MOTION AND MOTION BY PLAINTIFFS FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS TEXAS NAILS & BEAUTY SUPPLY AND TONY LEE PURSUANT TO FED. R. CIV. P. 55(B); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

52971620.1

**TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs Hand & Nail Harmony, Inc. ("Harmony"), Nail Alliance, LLC and Nail Alliance – Artistic, Inc. (collectively, "Plaintiffs") will, and hereby do, move pursuant to Fed. R. Civ. P. 55(b)(2) for entry of a default judgment against Defendants Tony Lee and Texas Nails & Beauty Supply (collectively, "Defendants"). Plaintiffs seek a judgment finding, declaring and adjudging that these Defendants have engaged in unfair competition in violation of California law (Bus. & Prof. Code § 17200), as defined in the Complaint [DE #1]; that these Defendants have engaged in trademark infringement in violation of the Lanham Act (15 U.S.C. § 1114), as defined in the Complaint [DE #1]; that these Defendants have engaged in unfair competition in violation of the Lanham Act (15 U.S.C. § 1125(a)), as defined in the Complaint [DE #1]; that these Defendants have engaged in copyright infringement in violation of the Copyright Act (17 U.S.C. § 501), as defined in the Complaint [DE #1]; that these Defendants have tortuously interfered with Plaintiffs' contractual relations and prospective business advantages in violation of California common law, as defined in the Complaint [DE #1]; that these Defendants are liable to Plaintiffs in an amount adequate to compensate Plaintiffs for the unfair competition, trademark and copyright infringement and tortious inference, damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1117(a), statutory damages and attorneys' fees pursuant to 17 U.S.C. §§ 504, 505, and pre-judgment and post-judgment interest as allowed by law; and that these Defendants, and any agents, servants, employees, attorneys and other persons in active concert or participation with them, or any of them, are permanently enjoined from:

1.     Copying, publishing, reproducing, or otherwise using any of Plaintiffs' copyrighted works or any work of art substantially similar to Plaintiffs' copyrighted works, including but not limited to the works of art evidenced by the Copyright

registrations identified in and attached to the Complaint [DE #1 & DE #9-1] (collectively, the "Harmony Works");

2.    Reproducing, adopting, or otherwise using any of the trademarks associated with the gel polishes, nail polishes, lamps or other nail care products manufactured by Harmony (collectively, the "Harmony Goods"), including but not limited to products identified by the GELISH® and ARTISTIC COLOUR GLOSS® marks (collectively, the "Harmony Marks"), or any mark confusingly similar to the Harmony Marks, in association with the manufacturing, promotion or sale of products that are not authentic or have identification codes removed or where Defendants do not provide the same level or nature of warranty protection, quality control or customer support as authorized distributors of Plaintiffs' products;

3.    Inducing a breach of or interfering with Plaintiffs' distribution agreements by selling, shipping, transferring, or offering to sell any Harmony Good purchased or requested over the Internet, including such brands as GELISH® or ARTISTIC COLOUR GLOSS®; and

4.    Engaging in unfair competition, including (a) by not disclosing to consumers that (i) Defendants are not authorized distributors of Plaintiffs, (ii) that Plaintiffs are selling diverted product, and (iii) that any warranty protection or customer support offered by Plaintiffs are not available to them, and (b) by not complying with all federal packaging requirements for flammable materials, including gel polish, shipped via U.S. mail.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities; the Defaults by the Clerk entered on February 12, 2016 [DE #25]; the supporting Declarations of Todd M. Malynn and Steven R. Malynn; the filings and records in this action; and all such other matter and testimony as may be presented at the hearing on the Motion.

52971620.1

1    As the defaulting Defendants have not appeared in this action, Plaintiffs were

2    unable to conduct the conference of counsel contemplated by Local Rule 7-3.

3

4    Date: April 25, 2016                              POLSINELLI LLP

5

6                                                By:___ /s/ Todd M. Malynn

7                                                      Todd M. Malynn

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.    INTRODUCTION ........................................................................ 1

II.   STATEMENT OF FACTS ............................................................. 1

III.  ENTRY OF DEFAULT JUDGMENT IS APPROPRIATE ...................... 4

    A.   *The Procedural Requirements Are Satisfied* ............................... 5

    B.   *The Eitel Factors Weigh in Favor of Default Judgment* ............................. 6

    C.   *Permanent Injunctive Relief is Appropriate* ............................... 13

IV.   CONCLUSION ....................................................................... 16

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

# Table of Authorities

Page(s)

**Cases**

*Aldabe v. Aldabe*,616 F.2d 1089 (9th Cir. 1980)......................................................6

*Allergan, Inc. v. Athena Cosmetics, Inc.*, 738 F.3d 1350 (9th Cir. 2013)....................9

*Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F.Supp.2d 1049 (C.D. Cal. 2011) .......7

*Breaking the Chain Foundation, Inc. v. Capitol Educational Support, Inc.*, 589
     F.Supp.2d 25 (D. D.C. 2008)..............................................................................7

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.
     4th 163 (1999)................................................................................................10

*Cosmos Jewelry Ltd. V. Po Sun Hon Co.*, 470 F. Supp. 2d 1072 (C.D. Cal. 2006) .........9

*Danning v. Lavine*, 572 F.2d 1386 (9th Cir.1978).....................................................9

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)........................................19

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ......................................6, 8, 15, 17, 18, 21

*Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388 (C.D. Cal. 2005) .........7

*Hand & Nail Harmony et al. v. Beverly Beaute et al.*, Civil Action No. 2:15-cv-
     07387-JFW-MRW ..........................................................................................16

*Kia Motors America, Inc. v. Autoworks Distributing*, 90 U.S.P.Q.2d 1598, 2009
     WL 499543 (D. Minn. 2009) ............................................................................11

*Kloepping v. Fireman's Fund*, 1996 WL 75314 (N.D. Cal. 1996)..............................9, 18

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197 (C.D.
     Cal. 2007)...............................................................................................19, 20, 21

*Nielsen v. Moore*, 2016 WL 758237 (D. Ariz., 2016) ...............................................8

*PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172 (C.D. Cal. 2002)..8, 15, 16, 17, 18

*Phillip Morris USA, Inc. v. Shalabi*, 352 F. Supp. 2d 1067 (C.D. Cal. 2004) ................9

*Rose v. Bank of America, N.A.*, 57 Cal. 4th 390 (2013)............................................9

*Sebastian International, Inc. v. Russolillo*, 186 F. Supp. 2d 1055 (C.D. Cal. 2000).......9

52971620.1

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) ...................................... 7

**Statutes**

15 U.S.C. § 1116 ............................................................................................................ 13

15 U.S.C. § 1117(a) ....................................................................................................2, 22

17 U.S.C. §§ 504, 505 ....................................................................................................... 2

49 U.S.C. §§ 5101 *et seq.* ................................................................................................. 9

Bus. & Prof. Code § 17200 ......................................................................................2, 1, 9

Penal Code § 537e ..............................................................................................9, 10, 22

Copyright Act (17 U.S.C. § 501) ...........................................................................12, 1, 9

Lanham Act (15 U.S.C. §§ 1114, 1125(a)) ..............................................................12, 9

Lanham Act (15 U.S.C. § 1125(a)) ................................................................................... 2

**Other Authorities**

C.D. Local Rule 55-1 ........................................................................................................ 6

Fed. R. Civ. P. 55(b)(2) ..........................................................................................2, 5, 6, 12

Local Rule 7-3 .................................................................................................................. 4

Local Rule 55-1 .............................................................................................................6, 7

Fed. R. Civ. P. 54(c) ......................................................................................................... 7

Fed. R. Civ. P. 55(a) ......................................................................................................... 7

5 Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, §
29:51.75 ...................................................................................................................... 11

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:15-cv-02105-CJC-JCG

52971620.1

**MEMORANDUM OF POINTS AND AUTHORITIES**

Plaintiffs Hand & Nail Harmony, Inc. ("Harmony"), Nail Alliance, LLC and Nail Alliance–Artistic, Inc. ("Plaintiffs") respectfully submit this memorandum in support of their motion for entry of a default judgment against defendants Texas Nails & Beauty Supply and Tony Lee ("Defendants").

## I.   INTRODUCTION.

This case arises out of the wrongful diversion and Internet sales of GELISH® brand gel polish—the leading gel polish in the nail industry.  Plaintiffs have asserted five causes of action against Defendants, including trademark infringement and unfair competition under the Lanham Act (15 U.S.C. §§ 1114, 1125(a)) and California law (Bus. & Prof. Code § 17200 and common law) and copyright infringement under the Copyright Act (17 U.S.C. § 501).

The Complaint was filed on December 17, 2015.  Both Defendants were served on February 11, 2016, thereby making their responsive pleading due on or before March 3, 2016 [DE #16; DE #17].  On February 12, 2016, Plaintiffs' counsel, Todd M. Malynn, received a call from a representative of Defendants and confirmed service of process.  Declaration of Todd M. Malynn ("Malynn Decl.") ¶ 3.  Nonetheless, no responsive pleading was filed by either Defendant.

On March 11, 2016, on Plaintiffs' application, the Court entered the default of both Defendants—Texas Nails & Beauty Supply and Tony Lee [DE# 21]. Subsequently, acting sua sponte, the Court issued an order directing Plaintiffs to move for entry of a default judgment by no later than April 25, 2016 [DE# 25]. After unsuccessfully trying to obtain Defendants' appearance (Malynn Decl. ¶ 5), Plaintiffs now move for a default judgment against Defendants.

## II.   STATEMENT OF FACTS.

Plaintiffs' principal, Danny Haile, in July 2009, invented the first brush-on, soak-off gel polish, which he trademarked and called GELISH®.  GELISH has the

Polsinelli LLP
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
310.556.1801

benefits of both a traditional nail polish (vibrant colors and a brush on application and finish) and a hard gel (long lasting wear). GELISH remains the leading brand of gel polish and competes with other brands, like ARTISTIC COLOUR GLOSS®, which is also manufactured and distributed by Plaintiffs. *See* Compl. ¶ 3.

GELISH has revolutionized the nail industry.[1] GELISH provided technicians a new product to sell as part of their service. By frequenting salons, consumers could obtain a natural, nail-polish look *but in a long-lasting finish*, which substantially increased salon business. Plaintiffs have sold millions of bottles of their gel polishes in the United States and throughout the world, and consumers recognize Plaintiffs' gel polishes by their distinctive trademarks and the trade dresses of their bottles. *See* Compl. ¶ 18.

GELISH and other gel polishes manufactured and sold by Plaintiffs are sold through authorized channels. *See* Compl. ¶¶ 3, 15-16. For example, they can be obtained at salons (where applied by professional nail technicians) or boutiques catering to professional nail technicians (where a license may be required to buy product). Plaintiffs do not sell GELISH (or any gel polish) directly to consumers, including over the Internet, and include provisions in their standard distribution agreements prohibiting diversion and Internet sales. *See id.* ¶¶ 29-30; *see also* Declaration of Steven R. Malynn, Exhibit ("Ex.") "1" (sample forms).

There are good reasons for these restrictions, including consumer safety. "Selling exclusively to trained boutiques and salons is important because the gel

---

[1] Prior to GELISH, consumers generally frequented salons on select occasions for pampering or professional treatment. They did not need to go to a salon for nail polish, which they could effectively apply at home. Also, because a nail-polish finish generally lasts only two to three days before it starts to chip and crack, it would be too expensive for most consumers to go to a salon just for nail polish. This reality was an impediment to salon business because consumers generally prefer the natural wear and look of a nail polish over then-existing alternatives (acrylic or hard-gel finishes) provided by professional nail technicians.

polish requires careful application of a base coat, a polish product and a top coat product, each of which must be properly irradiated with ultraviolet light for curing. Application by an inexperienced person without proper training and equipment may result in uncured or marred finishes. Worse, untrained/unqualified applications of any nail care product can result in bacterial infections of the nail bed or other painful or lasting injuries." Compl. ¶ 16. "When general merchandisers sell Harmony Goods outside of the salons and licensed professionals trained to effectively use the Harmony Goods, and in particular gel polish, their conduct could injure Harmony's goodwill and reduce Harmony's sales . . . ."[2] Id. ¶ 29.

Harmony includes identification codes on every bottle of GELISH, which allows Harmony to identify each bottle's origin. Compl. ¶ 32. Diverters, including Defendants, deface or receive defaced bottles of GELISH, which hinders not only Harmony's ability to identify the source of the diversion, but also its ability to recall any product and ensure quality control and customer service, including the proper shelf life of products manufactured by Harmony. Id. ¶¶ 6-7, 32-33.

Moreover, as a result of Defendants' unauthorized use of Plaintiffs' trademarks and copyrighted images, consumers and nail technicians that purchase product from them at www.tonynail.net are likely to erroneously believe that Defendants are an authorized distributor of Harmony products. Compl. ¶¶ 6-7, 38, 40. Worse, even if purchased by a nail technician, the technician may not be trained on GELISH or other Harmony goods, and therefore the ultimate consumer of the diverted product is unlikely to know that she is receiving potentially expired or defective product from a potentially untrained or unlicensed individual without

---

[2]   The application of any nail product, including acrylics, hard gels, gel polish and long-lasting nail polish, can result in, *inter alia,* harmful bacterial infections. Training and education are important, and Plaintiffs invest heavily in training and educating nail technicians in the proper use of their products.

any warranty protection as the product has been diverted in breach of contract outside of Harmony's authorized distribution channels. *Id.* ¶ 39.

Internet sales circumvent manufacturer restrictions on the distribution of professional products, facilitate the use of potentially harmful products by untrained, uneducated and unlicensed individuals, and forego warranty protections afforded by Plaintiffs. They also tend to circumvent expensive packaging requirements, which are mandated due to the flammable nature of nail products. Indeed, "at least some of [the] diverted Harmony Goods are being shipped from within this State to other states and to other countries without properly identifying and/or packaging the flammable goods in violation of [HMTA]." Compl. ¶ 33. Such unlawful shipment "is done outside of Plaintiffs' control." *Id.* ¶ 36. "Harmony is unable to observe any product defects which may be introduced during the unlawful shipping process." *Id.* Such diversion has resulted in damages to Plaintiffs, including lost sales, price erosion, increased transaction costs, and loss of goodwill, most if not all of which is not readily ascertainable or otherwise constitutes ongoing and irreparable harm. *Id.* ¶¶ 49-51.

## III.   ENTRY OF DEFAULT JUDGMENT IS APPROPRIATE.

Federal Rule of Civil Procedure 55(b) allows for a court-ordered default judgment following entry of default by the clerk when a party has failed to plead or otherwise defend a case. Pursuant to Rule 55(b)(2) and C.D. Local Rule 5501, the motion for default judgment shall set forth the following information:

(1)    When and against what party the default was entered;

(2)    The identification of the pleading to which default was entered;

(3)    Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative;

(4)    That the Servicemembers Civil Relief Act does not apply; and

52971620.1

(5)     That notice has been served on the defaulting party, if required by
        Fed. R. Civ. P. 55(b)(2).

The entry of default does not automatically entitle Plaintiffs to a court-ordered judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Instead, the decision whether to enter a default judgment is within this Court's discretion. *Id.* The Ninth Circuit has enumerated the following factors for courts to consider when exercising discretion as to the entry of default judgment: (1) The possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

In general, once the clerk has entered default, all factual allegations in the complaint will be taken as true. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). If a plaintiff is seeking money damages, the plaintiff is to submit evidence of its damages, and the damages sought must not be different in kind or amount from those set forth in the complaint. *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F.Supp.2d 1049, 1054 (C.D. Cal. 2011). Where a statute provides for injunctive relief, the Court has the discretion to grant injunctive relief in a default judgment. *See Elektra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 393-94 (C.D. Cal. 2005) (default judgment permanently enjoining violations of Copyright Act); *Breaking the Chain Foundation, Inc. v. Capitol Educational Support, Inc.*, 589 F.Supp.2d 25, 30 (D. D.C. 2008) (default judgment permanently enjoining violations of Lanham Act).

## A.     The Procedural Requirements Are Satisfied.

On March 10, 2016, Plaintiffs filed a Request to Enter Default by Clerk Pursuant to Rule 55(a) [DE #20]. In accordance with Local Rule 55-1, Plaintiffs

submitted the requested declaration [DE #20-1], which Plaintiffs reiterate here. *See* Malynn Decl. ¶ 2. The Clerk entered default on March 11, 2016 [DE #21]. Rule 54(c) is satisfied because Plaintiffs do not seek relief that differs in kind from, or exceeds, what is demanded in the Complaint.

**B.    The *Eitel* Factors Weigh in Favor of Default Judgment**.

Each of the *Eitel* factors weighs in favor of entry of a default judgment. In applying the *Eitel* factors, the Court accepts the factual allegations of the Complaint as true, but may require further evidence relating to the amount of damages or relief sought. *Nielsen v. Moore*, 2016 WL 758237 *3 (D. Ariz., 2016).

**1.    The Possibility of Prejudice to Plaintiffs**

A day after being served with the Complaint, a representative of the Defendants contacted Plaintiffs' counsel to discuss the case and a possible settlement. *See* Malynn Decl. ¶ 3. In response, Plaintiffs' counsel forwarded to Defendants a proposed settlement agreement. *Id.*, Ex. 1. Defendants failed to respond to the Complaint or Plaintiffs' proposed settlement. After being directed by the Court to move for entry of a default judgment, Plaintiffs' counsel contacted Defendants, both by telephone and email, to no avail. *Id.*, Ex. 2. It is evident that Defendants have no intention of responding, and therefore, if Plaintiffs do not receive a default judgment, they will have no recourse against Defendants. As such, this factor weighs heavily in favor of granting this motion. *PepsiCo, Inc. v. California Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002).

**2.    Plaintiffs' Complaint is Sufficient and Claims Meritorious**

The next two *Eitel* factors, the merits of Plaintiffs' claims and the sufficiency of the Complaint, require that a plaintiff "state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *2 (N.D. Cal. 1996) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)). Here, Plaintiffs have asserted five causes of action against Defendants, including trademark

infringement and unfair competition under the Lanham Act (15 U.S.C. §§ 1114, 1125(a)) and California law (Bus. & Prof. Code § 17200 and common law) and copyright infringement under the Copyright Act (17 U.S.C. § 501). The factual allegations, accepted as true, establish the merits of Plaintiffs' claims.

### (a)    Unfair Competition (Bus. & Prof. Code § 17200)

Plaintiffs' First Cause of Action seeks injunctive relief under all three prongs of California's Unfair Competition Law ("UCL"). *See* Compl. ¶ 46. It is settled that a violation of the Lanham Act for trademark infringement or unfair competition constitutes an unfair or deceptive act or practice. *See Cosmos Jewelry Ltd. V. Po Sun Hon Co.,* 470 F. Supp. 2d 1072, 1087 (C.D. Cal. 2006); *Phillip Morris USA, Inc. v. Shalabi,* 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004). Defendants' violations of California Penal Code § 537e and 49 U.S.C. §§ 5101 *et seq.* (the Hazardous Materials Transportation Act of 1975 or "HMTA") also constitute "unlawful business practices" under the UCL. *See Allergan, Inc. v. Athena Cosmetics, Inc.,* 738 F.3d 1350, 1355 (9th Cir. 2013); *Sebastian International, Inc. v. Russolillo,* 186 F. Supp. 2d 1055, 1072-73 (C.D. Cal. 2000); *see also Rose v. Bank of America, N.A.,* 57 Cal. 4th 390, 397 (2013); *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th 163, 184 (1999).

In denying a motion to dismiss filed by a separate defendant, the Court has already found that Plaintiffs have "stated a claim under the unlawful prong of the UCL . . . ." April 12, 2016 Minute Order [DE #27] at 2. Defendants violated Penal Code § 537e by "[k]nowingly buying, selling, receiving, disposing of . . . , and/or possessing the Harmony Goods from which Harmony's identification codes have been removed, defaced, covered, altered, or destroyed . . . ." Comp. ¶ 47a. Defendants violated the HMTA by "[s]hipping the diverted Harmony Goods without properly identifying and packaging the flammable goods . . . ." *Id.* ¶ 47b. Defendants have also engaged in unfair competition by violating the Lanham Act

529716201

and facilitating the diversion of Harmony Goods without informing consumers of the diversion and loss of customer support and quality control.  *Id.* ¶¶ 48a-b.

"Defendants' wrongful conduct has caused Plaintiffs to suffer a loss of money or property within the meaning of the [UCL], including (a) lost sales due to the unfair competition, (b) price erosion due to the unfair competition and undercutting of price due to, inter alia, the unlawful transportation of goods, (c) the costs of investigating whether the diverted Harmony Goods are counterfeit goods or altered Harmony Goods, and (d) monetary harm due to the injury to the goodwill associated with the Harmony Goods."  *Id.* ¶ 49. "Defendants' wrongful conduct, unless restrained by order of this Court, will continue to cause Plaintiffs to suffer a loss of money or property within the meaning of the [UCL] and will continue to cause irreparable harm to Plaintiffs and the consuming public at large."  *Id.* ¶ 50.

### (b)  **Lanham Act Violations**

Plaintiffs' Second and Third Causes of Action seek damages and injunctive relief for trademark infringement and unfair competition in violation of the Lanham Act. *See* Compl. ¶¶ 52-54, 60-62.  Under the Lanham Act, "a material difference between goods simultaneously sold in the same market under the same name creates a presumption of consumer confusion as a matter of law." *Societe Des. Produits Nestle, S.A. v. Casa Helvetia*, Inc., 982 F.2d 633, 640 (1st Cir. 1992). "The material difference between the authorized goods and the gray goods need not be an enormous difference—a single or small difference is sufficient to trigger a Lanham Act violation.  [5 Thomas J. McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 29:51.75] (listing types of material differences, including differences in aesthetics, labeling, and warranties)." *Kia Motors America, Inc. v. Autoworks Distributing*, 90 U.S.P.Q.2d 1598, 2009 WL 499543, at *3 (D. Minn. 2009) (discussing analogous claim for trademark infringement).

52971620.1

1   Here, the Harmony Goods diverted and sold by Defendants are materially
2   different from authentic product because, *inter alia*, Harmony's identification codes
3   have been removed. Compl. ¶¶ 32-33, 55, 63. These "codes are designed to, *inter*
4   *alia*, assist Harmony and its agents in quality control and detection of counterfeits."
5   *Id.* ¶¶ 55, 63. "The grinding or removal of the identification codes degrades the
6   appearance of the bottles," which is "material to the consumer decision to purchase
7   the Harmony Goods." *Id.* ¶ 56. "It also restricts boutiques from knowing the shelf
8   life of the diverted goods." *Id.* In addition, "Defendants do not inform consumers
9   or potential consumers that the diverted Harmony Goods . . . are not subject to the
10   quality controls established by Harmony," including "Harmony's warranty and
11   other support services, such as notice of any product defects." *Id.* ¶¶ 48h, 64. "To
12   the contrary, Defendants . . . willfully mislead consumers [to] believe that they are
    authorized Harmony distributors." *Id.* ¶ 64.

13   "Defendants' actions have interfered with Harmony's ability to control the
14   quality of its Harmony Goods" and "has subject Plaintiffs to the risk of injury to
15   reputation of the Harmony Marks by consumer association of Defendants with the
16   Harmony Marks and Plaintiffs." *Id.* ¶¶ 55, 65. "[C]onsumers of the diverted
17   contraband are unlikely to know that [they are] receiving potentially defective nail
18   care product by a potentially untrained or unlicensed individual bearing . . . the
19   Harmony Marks in violation of the law and in breach of Plaintiffs' distribution
20   agreements." *Id.* ¶ 39. Further increasing the risk of confusion that Defendants are
21   authorized distributors with proper training and consumer support, Defendants
22   without authorization utilize Plaintiffs' registered copyrights to promote diverted
    product on their website (www.tonynail.net). *Id.* ¶¶ 40-42, Ex. G.

23   "As a direct and proximate result of Defendants' infringement of Plaintiffs'
24   Harmony Marks, Plaintiffs have suffered and continue to suffer damages to their
25   business, goodwill, and property in an amount not less than $100,000 per
26

9

52971620.1

1   Defendant, with the precise amount to be ascertained at trial." *Id.* ¶¶ 57, 66.

2   "Unless immediately restrained and enjoined by this Court under 15 U.S.C. § 1116

3   and the equitable powers of the Court, Defendants will persist in their activities,

4   thereby causing Plaintiffs additional irreparable harm." *Id.* ¶¶ 58, 67.

5                       **(c)    Copyright Infringement**

6       Plaintiffs' Fourth Cause of Action seeks damages and injunctive relief for

7   copyright infringement. *See* Compl. ¶ 69. "The Harmony Works were registered

8   with the U.S. Copyright Office prior to institution of this action." Compl. ¶¶ 26-28.

9   69, Ex. F-1.   The Harmony Works constitutes copyrightable subject matter and

10  Harmony is the owner of the copyrighted works.    *Id.* ¶¶ 71-72.   "Harmony

11  incorporates a copyright notice on its copyrighted materials." *Id.* ¶ 43.  No license

12  was provided to Defendants. *Id.* ¶ 72. Defendants "willfully infringed Harmony's

13  copyrights by their unauthorized copying of the copyrighted Harmony Works on

14  the Infringing Website[ www.tonynail.net]," which Defendants operate, have the

15  right to control, or are otherwise responsible for the copyright infringement

16  occurring on the website. *Id.* ¶¶ 6-7, 40-42, 73-79, Ex. G.  As a proximate result,

17  Defendants have been unjustly enriched while Plaintiffs and its authorized

    distributors have suffered damages." *Id.* ¶ 80.

18                      **(d)    Tortious Interference**

19      Plaintiffs' Fifth Cause of Action seeks damages and injunctive relief for

20  tortious interference with Plaintiffs' distribution agreements and prospective

21  economic advantage of being able to train, maintain and support authorized

22  distributors. *See* Compl. ¶ 92. "Harmony distributors have agreed to distribute and

23  sell the Harmony Goods pursuant to certain terms and conditions, which are known

24  to Defendants."  *Id.* ¶ 93; Declaration of Steven R. Malynn, Ex. 1 (distribution

25  agreements). "Plaintiffs' agreements and policies with their authorized distributors

26  prohibit diversion and the selling of Harmony Goods on the Internet without

52971620.1

1 | Harmony's advanced approval." Compl. ¶ 93. "Harmony's distribution
2 | agreements also are designed to restrict the sale of the Harmony Goods to licensed
3 | salons with properly trained cosmetologists." *Id.* ¶ 94. "When general
4 | merchandisers sell Harmony Goods outside the authorized distribution network,
5 | their conduct damages Plaintiffs' goodwill and could endanger end-user customers
6 | who may receive nail care services from untrained individuals." *Id.* ¶ 95.
7 | "Defendants know of the existence of the Harmony distribution agreements and
8 | know of the restrictions . . . and reasons therefore." *Id.* ¶¶ 95-96.

"Defendants intended to cause breaches by authorized Harmony distributors
9 | of their contractual obligations with Harmony so that those distributors would sell
10 | Harmony Goods to Defendant." *Id.* ¶ 97. Alternatively, Defendants acted in
11 | "reckless" disregard of Plaintiffs' rights or negligently in that "Defendants knew or
12 | should have known that these relationships would be disrupted if Defendants failed
13 | to act with reasonable care" and "Defendants failed to act with reasonable care by
14 | conducting their unlawful activity as described herein." *Id.* ¶¶ 99, 100.

15 | "Defendants' conduct was a substantial factor in making Plaintiffs'
16 | performance of their contracts with the Harmony distributors more difficult, more
17 | expensive and less profitable." Indeed, "[a]s a result of the conduct of Defendants,
18 | Plaintiffs' contractual relationships have been harmed, breached and disrupted.
19 | Plaintiffs have suffered damages . . . , including increased costs and reduced
20 | revenues with its authorized dealers, as their customers have purchased fewer
21 | Harmony Goods that they otherwise would have purchased." *Id.* ¶¶ 98, 100.

### 3.   What is at Stake in the Action

22 | Under the fourth *Eitel* factor, the Court must consider the amount of money
23 | or other relief at stake in relation to the seriousness of Defendants' conduct. *See*
24 | *PepsiCo, Inc.*, 238 F.Supp. 2d at 1177. Here, Plaintiffs seek both monetary and
25 | injunctive relief. This *Eitel* factor weighs in favor of default judgment because a

26 |

failure to enter a default judgment would provide Plaintiffs with no remedy as to the irreparable harm being caused by the unfair competition, wrongful use of its intellectual property, and disruption of its distribution agreements. *See id.*

With regard to monetary relief, wherein Plaintiffs have prayed for no less than $100,000, Plaintiffs' request also weighs in favor of default judgment. Based on interrogatory responses obtained in a similar action in this Court, *Hand & Nail Harmony et al. v. Beverly Beaute et al.*, Civil Action No. 2:15-cv-07387-JFW-MRW, where the Internet diverter defendant voluntarily agreed to stop selling Harmony Goods and settled the lawsuit, that Internet diverter reported sales of $48,000 worth of goods. Malynn Decl., Ex. 3. Based on their refusal to enter into a similar agreement, Defendants appear to have somewhat more at stake that they are trying to protect. In fact, Plaintiffs have already documented fifty (50) incidents of copyright infringement by Defendants. *See* Compl., Ex. G. At the basic rate of $700 to $30,000 per work, and up to $150,000 per work for willful infringement, Defendants' request of $100,000 in damages is relatively modest. By ignoring the lawsuit, Defendants have demonstrated that they will likely continue to violate the law, infringe upon and use Plaintiffs' intellectual property, and disregard Plaintiffs' contracts, particular once nobody is looking and especially if no consequence befalls them. Defendants' conduct and disregard of Plaintiffs' rights is sufficiently serious to justify the imposition of the requested monetary relief.

### 4.    The Possibility of a Dispute Concerning Material Facts

This factor weighs heavily in favor of entering default judgment. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo, Inc.*, 238 F.Supp. 2d at 1177. As to damages, the Court in its discretion can determine the amount of statutory damages based on the fifty (50) shown incidents of copyright infringement, coupled with the unfair competition, trademark infringement and tortious inference and evidence of the

52971620.1

amount of sales by a similarly situated Internet website. Accordingly, there is no genuine dispute of material facts to preclude the granting of this motion.

### 5.    Possibility of Excusable Neglect

The next *Eitel* factor considers the possibility that the failure to answer was due to excusable neglect. Here that risk is non-existent. Defendants have made an informed choice not to respond. They contacted Plaintiffs' counsel and elicited a settlement proposal. They then refused any follow-up communications with Plaintiffs' counsel, including hanging up on him. Malynn Decl., ¶¶ 2-4 & Exs. 1-2. It is apparent that Defendants simply refuse to participate in this proceeding. As such, this *Eitel* factor also weighs in favor of granting the Motion.

### 6.    Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. "However, the mere existence of Fed.R.Civ.P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F.Supp. 2d 1177. "Moreover, Defendants failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *Id.* Thus, termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action. "[T]he preference to decide cases on the merits does not preclude a court from granting default judgment." *Id.* (*citing* Kloepping, 1996 WL 75314, at *3). Accordingly, this *Eitel* factor is at worst neutral and does not preclude entry of a default judgment against Defendants.

### C.    Permanent Injunctive Relief is Appropriate.

Plaintiffs seek injunctive relief to prevent Defendants from continuing to interfere with Plaintiffs' distribution agreements, from defacing or removing identification codes from Harmony Goods, from infringing upon Plaintiffs' trademarks and copyrights or otherwise confusing consumers by holding themselves out as an authorized distributor, and from selling competitive goods

52971620.1

over the Internet without proper packaging.  To this end, the Court must determine whether Plaintiffs have demonstrated "(1) that [they have] suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### 1.   Irreparable Harm

"The concept of irreparable harm, unfortunately does not lend itself to definition." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1210 (C.D. Cal. 2007).  Courts often view irreparable harm that is "suffered when the injury cannot be adequately atoned for in money, or when the district court cannot remedy the injury following a final determination on the merits." *Id.* In the context of intellectual property infringement, irreparable harm may be established solely based on past infringement, but it is easily inferred where, as here, there is a likelihood of future infringement and an inability to address the harm caused thereby with money damages. *See id.* at 1215.

As set forth in the Declaration of Steve M. Malynn, Harmony's Chief Operating Officer, the wrongful diversion and Internet sales of Harmony Goods causes ongoing and irreparable harm.  Among other things, the loss of control over Harmony's distribution injures Harmony's reputation and goodwill among actual and potential authorized distributors of Harmony Goods.  *Id.* ¶ 24.  It results in customer complaints wrongfully attributed to Harmony, affecting Harmony's reputation and goodwill and reducing demand for Harmony Goods.  *Id.*  It results in price erosion, which is not readily ascertainable, if ascertainable at all.  *Id.*  The consumer confusion resulting from Defendants' misconduct also results in irreparable harm as Defendants, not being authorized distributors, invariably do not

52971620 1

1 | provide the same level of professional training and customer support required and
2 | expected of authorized Harmony distributors. *Id.*

### 2.   Adequate Remedy at Law

The requisite analysis for this prong significantly overlaps with the first prong; indeed, the two are often indistinguishable. *Metro-Goldwyn-Mayer Studios, Inc.*, 518 F. Supp. 2d at 1219. As with the irreparable injury, Defendants' refusal to participate in this process adequately demonstrates that Plaintiffs will continue to have no adequate remedy at law to address the very likely continued use of their intellectual property; continued diversion of defaced Harmony Goods in violation of the Penal Code and Lanham Act and in breach of Harmony's distribution agreements; continued use of U.S. mail to cheaply deliver small cosmetic, but flammable items in violation of the HMTA; continued confusion as to the source of the Harmony Goods and Defendants' association with Plaintiffs; and continued harm to Plaintiffs' reputation and goodwill for the reasons discussed above. Further, requiring Plaintiffs to continuously pursue a "multiplicity of suits" against Defendants would, itself, constitute an inadequate remedy at law. *Id.* at 1220.

### 3.   Balance of Hardships

This factor requires the Court to consider the hardships that might afflict the parties by the granting or denial of Plaintiffs' request for a permanent injunction. Allowing Defendants unfettered ability to engage in unfair competition and infringe upon Plaintiffs' intellectual property and induce breaches of Plaintiffs' distribution agreements will cause a significant hardship to Plaintiffs. In contrast, Defendants cannot demonstrate that they will suffer any undue hardship by being required to stop their wrongful conduct. As such, this factor weighs heavily in favor of granting the injunction.

#### 4.   Public Interest

The public interest will be served by a permanent injunction because it will (a) protect consumers, (b) protect intellectual property from increased threats of infringement, and (c) protect the stability of contracts, which, in turn, incentivizes the creation of original works. *Metro-Goldwyn-Mayer Studios, Inc.*, 518 F. Supp. 2d at 1222. As such, the injunction should be issued.

## IV.   CONCLUSION.

Plaintiffs are entitled to a default judgment in this matter. Defendants have failed to respond to the Complaint and have provided no indication that they wish to participate in any manner in this litigation. Plaintiffs have satisfied each of the *Eitel* factors and judgment should enter in their favor as follows:

A.   Finding, declaring and adjudging that Defendants have infringed upon Plaintiffs' registered copyrights;

B.   Finding, declaring and adjudging that Defendants have infringed upon Plaintiffs' registered trademarks;

C.   Finding, declaring and adjudging that Defendants have engaged in unfair competition, including by infringing upon Plaintiffs' trademarks, by violating Penal Code § 537e, by violating the HMTA, and by not disclosing to consumers that they are not authorized distributors of Plaintiffs and selling diverted product without the same nature and level of warranty protection and customer support;

D.   Finding, declaring and adjudging that Defendants have tortuously interfered with one or more distribution agreements as well as Plaintiffs' prospective economic advantage in the maintenance and performance of Plaintiffs' distribution agreements;

52971620.1

E.    Awarding Plaintiffs compensatory and/or statutory damages against Defendants of no less than $100,000 pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504;

F.    Enjoining Defendants and their officers, directors, agents, employees, shareholders and affiliates, and all others acting in concert with them, or any of them, as set forth in Plaintiffs' Notice of Motion;

G.    Finding Defendants' infringement to be willful, Defendants' misconduct to be exceptional, and awarding Plaintiffs attorneys' fees in an amount to be proven and incorporated into a final judgment;

H.    Awarding Plaintiffs' pre-judgment interest and post-judgment interest as allowed by law; and

I.    Granting such other and further relief as this Court may deem just and proper.

Dated: April 25, 2016        **POLSINELLI LLP**

*/s/ Todd M. Malynn*

By:  Todd M. Malynn, Esq.

*Attorneys for Plaintiffs*
HAND & NAIL HARMONY, INC.,
NAIL ALLIANCE, LLC and NAIL
ALLIANCE – ARTISTIC, INC.

# PROOF OF SERVICE

I am a citizen of the United States and resident of the State of California.  I am employed in Los Angeles, State of California, in the office of a member of the bar of this Court, at whose direction the service was made.  I am over the age of eighteen years and not a party to the within action.

On April 25, 2016, I served the following documents in the manner described below:

**NOTICE OF MOTION AND MOTION BY PLAINTIFFS FOR ENTRY OF DEFAULT JUDGMENT AGAINST DEFENDANTS TEXAS NAILS & BEAUTY SUPPLY AND TONY LEE PURSUANT TO FED. R. CIV. P. 55(B); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREO**

☒   (BY U.S. MAIL)  I am personally and readily familiar with the business practice of Polsinelli LLP for collection and processing of correspondence for mailing with the United States Parcel Service, and I caused such envelope(s) with postage thereon fully prepaid to be placed in the United States Postal Service at Los Angeles, California.

On the following part(ies) in this action:

Texas Nails & Beauty Supply         Tony Lee
4475 Walzem Road, Suite 1           4475 Walzem Road, Suite 1
San Antonio, TX 78218               San Antonio, TX 78218

I declare under penalty of perjury under the laws of the United States of America/State of California that the foregoing is true and correct. Executed on April 25, 2016 at Los Angeles, California.

*/s/ Christine Hess*

Christine Hess

MOTION FOR ENTRY OF DEFAULT JUDGMENT
Case No. 8:15-cv-02105-CJC-JCG

52971620.1