# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| HAND & NAIL HARMONY, INC., NAIL ALLIANCE, LLC, and NAIL ALLIANCE-ARTISTIC, INC., <br><br> Plaintiffs, <br><br> v. <br><br> TEXAS NAILS & BEAUTY SUPPLY, TONY LEE, DOOR TO DOOR NAIL SUPPLY, NAIL SUPPLY, INC., SALON SUPPLY STORE, and DOES 1 through 30, inclusive, <br><br> Defendants. | ) Case No.: SACV 15-02105-CJC(JCGx) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) **ORDER GRANTING IN PART** <br> ) **PLAINTIFFS' MOTION FOR** <br> ) **DEFAULT JUDGMENT** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# I.  INTRODUCTION

Plaintiffs Hand & Nail Harmony, Inc. ("Harmony"), Nail Alliance, LLC, and Nail Alliance-Artistic, Inc., filed this lawsuit against Defendants Texas Nails & Beauty Supply ("Texas Nails"), Tony Lee, Door To Door Nail Supply, Nail Supply, Inc., Salon Supply Store, and Does 1 through 30 inclusive, for trademark infringement (Section 32(1) of the Lanham Act, 15 U.S.C. § 1114), federal unfair competition (Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)), state unfair competition (California Business & Professions Code §§ 17200 *et seq.* ("UCL")), copyright infringement (17 U.S.C. § 501), breach of contract,[1] and tortious interference with contractual relations and/or prospective business advantages.  (*See generally* Dkt. 1 [Complaint, hereinafter "Compl."].)  Salon Supply Store, Door To Door Nail Supply, and Nail Supply, Inc. have been dismissed from this action.  (Dkts. 34, 51, 53.)  Tony Lee and Texas Nails (the "Remaining  Defendants"), have failed to appear.  (Dkt. 21.)  Before the Court is Plaintiffs' renewed motion for default judgment against the Remaining Defendants.  (Dkt. 30 [Memorandum of Points and Authorities, hereinafter "MPA"]; Dkt. 54 [Renewed Notice of Motion, hereinafter "Mot."].)[2]   For the following reasons, the motion is GRANTED IN PART.[3]

# II.  BACKGROUND

Plaintiffs manufacture, distribute, and sell "professional brands of high-quality, soak-off gel polishes and other nail products and accessories in a wide variety of colors"

---

[1] The breach of contract claim is only brought against "Doe" Defendants.  (Dkt. 1 ¶¶ 86–91.)  Since no "Doe" Defendants have been named in this case, the Court need not consider this cause of action.

[2] The Court previously denied the motion for default judgment without prejudice on two occasions. (Dkts. 37, 43.)  In renewing their motion, Plaintiffs rely on their previously-filed memorandum of points and authorities.  (*See* Dkts. 30, 54.)

[3]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for March 6, 2017, at 1:30 p.m. is hereby vacated and off calendar.

(the "Harmony Goods").  (Compl. ¶ 15.)  These goods are sold to boutiques and salons in the United States and abroad through a limited number of qualified distributors.  (*Id.* ¶¶ 15, 29–30.)  Plaintiffs "contractually obligate[] distributors to sell Harmony Goods to only properly trained boutiques and salons," in part because their products require careful application and must be "properly irradiated with ultraviolet light for curing."  (*Id.* ¶ 16.)  Application by an inexperienced or untrained person may result in "uncured or marred finishes," or worse, "bacterial infections of the nail bed or other painful or lasting injuries."  (*Id.*)  Plaintiffs' distribution agreements also inform distributors of their "policy against diversion and expressly prohibit the sale of Harmony Goods to unauthorized distributors, redistributors, and diverters . . . . [and] require Plaintiffs' authorized distributors to carefully monitor the purchasing patterns of all its [sic] salon customers and licensed professionals."  (*Id.* ¶ 30.)  Plaintiffs do not sell their products over the internet or directly to consumers.  (Dkt. 30-5 [hereinafter "Steven Malynn Decl."] ¶ 10.)

Plaintiffs own several federal trademarks, and claim that the "high quality nature" of their products and their "distinctive marks, proprietary bottles, lamps, and other accessories, ha[ve] made the Harmony Goods a phenomenal commercial success." (Compl. ¶¶ 17–18.)  These trademarks include GELISH (Reg. Nos. 4,096,115 and 3,857,946), HAND & NAIL HARMONY (Reg. Nos. 3,750,701 and 4,013,304), VITAGEL (Reg. No. 4,318,850), VITAGEL BY GELISH (Reg. No. 4,511,405), 18G (Reg. No. 4,206,100), and ARTISTIC COLOR GLOSS (Reg. Nos. 4,222,432 and 4,222,433).  (*Id.* ¶ 22.)  Plaintiffs have sold millions of bottles of their gel nail polishes at home and abroad, and "consumers recognize the Harmony Goods by, *inter alia*, the Harmony Marks and trade dress."  (*Id.* ¶ 18.)  Plaintiffs also own several artistic works (the "Harmony Works") and other promotional materials which they use to promote their products.  (*Id.* ¶ 26.)  They have obtained twenty-one copyright registrations to protect their works.  (*Id.* ¶ 27.)

Plaintiffs allege that the Harmony Goods are currently being diverted to unauthorized distributors.  (*Id.* ¶ 31.)  Texas Nails, which is not an authorized distributor, allegedly removes, defaces, covers, alters, or destroys the identification codes from those products, and then sells or distributes them.  (*Id.* ¶¶ 6, 32, 34.)  Plaintiffs also allege that Texas Nails buys or receives defaced Harmony products and ships them without properly identifying or packaging the flammable goods.  (*Id.* ¶¶ 6, 33.)  This breaches the distribution agreements, prevents Plaintiffs from identifying the source of the diverted goods, prevents salons and boutiques from determining the proper shelf life of the goods, and confuses or deceives customers.  (*Id.* ¶¶ 34, 36, 38.)  Texas Nails' website, www.tonynail.net, also allegedly sells such contraband to California consumers, and "includes hundreds of slavishly copied reproductions of the Harmony Works, or substantially similar copies of those works, to promote and perpetuate Texas Nails' unlawful conduct."  (*Id.* ¶¶ 6, 40; *id.* Ex. A; *id.* Ex. G-1.)  Defendant Lee is a principal, officer, employee, and/or agent of Texas Nails who allegedly "directs and/or actively participates in Texas Nails' tortious conduct" and controls the Texas Nails website.  (*Id.* ¶ 7.)

Accordingly, Plaintiffs filed this action for state and federal unfair competition, trademark infringement, copyright infringement, breach of contract, and tortious interference.  (*See generally* Compl.)  Plaintiffs assert all their claims except breach of contract against the Remaining Defendants, and have moved for default judgment.  (*See generally* Mot.)  Plaintiffs request statutory damages, costs and attorneys' fees, interest, and a permanent injunction.  (*Id.* at 2–3.)

## III.  ANALYSIS

Rule 55(b)(2) of the Federal Rules of Civil Procedure and this Court's Local

Rule 55-1 "require that applications for default judgment set forth the following information: (1) when and against which party default was entered; (2) the identification of the pleadings to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether the person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required." *Philip Morris USA Mc. v. Castworld Products, Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003).

Here, Plaintiffs have set forth the required information: (1) the clerk entered default against the Remaining Defendants on March 11, 2016, (Dkt. 21); (2) the default was entered as to the Complaint, (*id.*); (3) Defendants are not infants or incompetent persons, (Dkt. 30-1 [hereinafter "Todd Malynn Decl."] ¶ 2); (4) the Soldiers' and Sailors' Relief Act of 1940 does not apply, (*id.*); and (5) Plaintiffs' motion has been served upon the Remaining Defendants, (*id.*; *id.* Ex. 1; Dkt. 16; Dkt. 17).  Accordingly, the procedural requirements for default judgment are satisfied.

## A.  Merits of the Motion for Default Judgment

After entry of default, a court may grant a default judgment on the merits of the case.  Fed. R. Civ. P. 55(a)–(b).  "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court may consider the following factors articulated in *Eitel v. McCool*, 782 F.2d 1470, (9th Cir. 1986), in exercising such discretion:

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72.  Because default has been entered in this case, the Court must construe as true all of "the factual allegations of the complaint, except those relating to the amount of damages."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  Here, the *Eitel* factors weigh in favor of entry of a default judgment against the Remaining Defendants.  The Court considers each in turn.

### 1.  Possibility of Prejudice to Plaintiffs

If the motion for default judgment is not granted, Plaintiffs "would be denied the right to judicial resolution of the claims presented."  *Elektra Entertainment Group, Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005).  The day after the Remaining Defendants were served with the Complaint, their representative contacted Plaintiffs' counsel to discuss the case and a possible settlement.  (Todd Malynn Decl. ¶ 3.)  Plaintiffs' counsel forwarded a proposed settlement agreement, but the Remaining Defendants did not thereafter respond or otherwise appear in this action, despite Plaintiffs' counsel's attempts to notify them of the impending motion for default judgment.  (*Id.* Exs. 1, 2.)  By choosing to default rather than defend, they are "deemed to have admitted the truth of Plaintiff[s'] averments," *Philip Morris*, 219 F.R.D. at 499, thereby establishing liability.  Absent the entry of default judgment against the Remaining Defendants, Plaintiffs would be prejudiced, as they would be left without the ability to seek relief to which they are entitled.

### 2. & 3.  The Merits of the Claim and the Sufficiency of the Complaint

The second and third *Eitel* factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover."  *Phillip Morris*, 219 F.R.D. at 499.  Plaintiffs assert claims for violations of Section 32(1) and Section 43(a) of the Lanham Act for trademark infringement and federal unfair competition, respectively, violations of

California's UCL, copyright infringement, and tortious interference with contractual relations and/or prospective business advantages against the Remaining Defendants.  (*See generally* Compl.)

The essential elements of Section 32(1) and 43(a) of the Lanham Act are identical, and can also establish liability under the UCL.  *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1072 (C.D. Cal. 2004) (citing *Brookfield Communications, Inc. v. West Coast Entm't Corp*., 174 F.3d 1036, 1046 n.6, 1047 n.8 (9th Cir. 1999) (holding the same legal standard applies to Sections 32(1) and 43(a) of the Lanham Act); *Meta-Film Assocs. v. MCA, Inc.*, 586 F. Supp. 1346, 1363 (C.D. Cal. 1984) (concluding that misappropriation deemed "unfair" under the Lanham Act is also "wrongful" and proscribed under Cal. Bus & Prof. Code § 17200)).  Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), prohibits the "use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" without the consent of the registrant.  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), similarly confers liability on anyone "who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." California's UCL, in turn, requires Plaintiffs to show that the Remaining Defendants engaged in "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.

Thus, Plaintiff can prevail on these three claims by showing: "(1) it owns a valid and protectable interest/trademark . . . [and] (2) Defendants subsequently and without authorization used a similar mark likely to cause consumer confusion, deception or mistake." *Shalabi*, 352 F. Supp. 2d at 1072; *see also* 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 2:8 (4th ed. 2015) ("In many factual situations, the same result is reached whether the legal wrong is labeled as trademark infringement or unfair competition.  In many cases the courts often lump the two categories together and speak of them as allied, and sometimes identical, concepts.  Today, the keystone of that portion of unfair competition law which relates to trademarks is the avoidance of a likelihood of confusion in the minds of the buying public.")

The federal registration of a trademark with the U.S. Patent and Trademark Office constitutes "prima facie evidence of the validity of the registered mark, ownership of the mark and of the registrant's exclusive right to use the registered mark."  15 U.S.C. §§ 1057(b), 1115(a); *Brookfield*, 174 F.3d at 1046–47.  Plaintiffs have alleged that Harmony is the registered owner of the GELISH mark, and have provided evidence of the registration in support of their claims.  (Compl. ¶ 11; *id.* Ex. E.)

Additionally, Plaintiffs sufficiently allege that the Remaining Defendants' conduct was unfair and unlawful.  Specifically, they allegedly remove, deface, cover, alter, or destroy the identification codes from diverted Harmony Goods, and/or receive such defaced Harmony Goods, in violation of California Penal Code section 537e, and ship this contraband without properly identifying or packaging the flammable goods in violation of the Hazardous Materials Transportation Act of 1975, 49 U.S.C. §§ 5101 *et seq.*  (Compl. ¶ 6.)  Plaintiffs also allege that Texas Nails operates a website that sells gel nail polish products bearing the GELISH mark without authorization, and they have provided printouts of Texas Nails' website supporting these claims.  (*Id.*; *id.* Ex. A; *id.* Ex. G-1.)  The resale of a materially altered product constitutes trademark infringement

"because the product is not genuine and may cause confusion regarding the product's source or quality." *HM Elecs., Inc. v. R.F. Techs., Inc.*, No. 12-CV-2884-MMA (WMC), 2013 WL 12074966, at *2 (S.D. Cal. Oct. 3, 2013). Here, the altered Harmony products are materially different from the authentic products because the identification codes have been removed, and therefore create consumer confusion. *See Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243 (2d Cir. 2009) (The "district court correctly found that Davidoff was likely to succeed on the merits in its contention that CVS's sales of its products with the ["unique production code"] removed constituted trademark infringement."); *Davidoff & CIE, S.A. v. PLD Intil Corp.*, 263 F.3d 1297 (11th Cir. 2001) (the etching of glass bottles to remove batch codes was material alteration of product that created a likelihood of consumer confusion); *CutlerHammer, Inc. v. Universal Relay Corp.*, 285 F. Supp. 636, 639 (S.D.N.Y.1968) (the relabeling of a product to indicate that the product meets current standards constituted a "material alteration of the product and a misuse of plaintiff's trademark"). For purposes of default judgment, Plaintiff's allegations and supporting evidence are sufficient to establish liability under Sections 32(1) and 43(a) of the Lanham Act, and thereby demonstrate that the Remaining Defendants' conduct was also unfair and unlawful under the UCL.

Regarding Plaintiffs' copyright infringement claim under 17 U.S.C. § 501, "Plaintiffs must establish that the Defendant[s] violated an exclusive right of the copyright owner as provided by 17 U.S.C. § 106." *Elektra Entertainment*, 226 F.R.D. at 392. Plaintiffs allege that "[a]s part of its efforts to market and promote the Harmony Goods, Harmony owns artistic photographs and depictions of Harmony Goods and product packaging . . . as well as in other promotional material distributed by Harmony, which constitute copyrightable subject matter under the laws of the United States." (Compl. ¶ 26.) They further allege that these works were registered with the U.S. Copyright Office prior to the start of this action, (*id.* ¶¶ 26–28), and provide the Court with copies of all such registrations, (Dkt. 9-1 (Exhibit F to Complaint, attached in notice

of errata)).  Plaintiffs claim that the Remaining Defendants copied such registered works on their website without authorization, and provide printouts of the website containing the infringing images.  (Compl. ¶¶ 6–7, 40–42, 73–79; *id.* Ex. G-1.)  Plaintiff's allegations of copyright infringement are also sufficient.

Finally, Plaintiffs seek relief for the Remaining Defendants' alleged tortious interference with Plaintiffs' distribution agreements and prospective economic advantage of "being able to train, maintain and support authorized distributors."  (MPA at 10.)  To prevail, they must show "(1) an economic relationship between [Plaintiffs] and some third party, with the probability of future economic benefit . . .; (2) Defendant[s'] knowledge of the relationship; (3) intentional acts by Defendant[s] designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to [Plaintiffs] proximately caused by the acts of Defendant[s]."  *Botts v. Kompany.com*, No. SACV0900195JVSANX, 2013 WL 12137690, at *3 (C.D. Cal. Apr. 10, 2013).  Plaintiffs claim that their "agreements and policies with their authorized distributors prohibit diversion and the selling of Harmony Goods on the Internet without Harmony's advanced approval," (Compl. ¶ 93), and have provided copies of such agreements to the Court, (Steven Malynn Decl. Ex. 1).  However, they allege only in vague terms that "one or more of" its authorized distributors is breaching said agreements, and that "Defendants know of the existence of the Harmony distribution agreements and know of the restrictions concerning the Harmony Products, and reasons therefore."  (Compl. ¶ 96.)  These allegations are too conclusory to establish liability on the part of the Remaining Defendants.  In the first place, the allegations supporting this cause of action are not specific to the Remaining Defendants, but reference all "Defendants."  (*See id.* ¶¶ 92–102.)  Nor are there any specific factual allegations that support the contention that the Remaining Defendants knew of the distribution agreements or obtained the diverted goods from an authorized distributor.  (*See generally id.*)  The Complaint does not identify the distributors in breach or identify where the Remaining Defendants obtained

the goods at issue.  Thus, Plaintiffs' tortious interference claims are not supported with sufficient factual allegations.

Defendants have not responded to the Complaint, and their default is therefore deemed an admission of the well-pled facts in the Complaint.  *Elektra Entertainment*, 226 F.R.D. at 392.  Accordingly, the second and third *Eitel* factors weigh in favor of entry of default judgment regarding Plaintiffs' claims for Lanham Act violations, unfair competition, and copyright infringement, but not for tortious interference.

### 4.  The Sum of Money at Stake

The fourth *Eitel* factor requires the Court to "consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc. v. Cal. Security Cans,* 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471–72.  Here, Plaintiffs seek "no less than $100,000" based on fifty documented incidents of copyright infringement by Defendants.  17 U.S.C. § 504(c) provides for statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just," and in cases of willful infringement, "not more than $150,000." "[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed." *Microsoft Corp. v. Nop*, 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008).  Courts regularly award amounts in excess of $100,000 for default judgments concerning copyright infringement.  *See, e.g.*, *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1058 (C.D. Cal. 2011) (awarding $150,000 in statutory damages); *Nop*, 549 F. Supp. 2d at 1238 (awarding $970,000 in statutory damages); *Rovio Entm't Ltd v. Royal Plush Toys, Inc.*, No. C 12-5543 SBA, 2014 WL 1153780, at *3 (N.D. Cal. Mar. 20, 2014) (affirming the magistrate judge's recommendation to award $700,000 in statutory

damages).  Therefore, the low sum of money at stake here, when viewed in the context of the Remaining Defendants' infringement, weighs in favor of default.

### 5. & 6.  The Possibility of a Dispute Concerning Material Facts and Whether the Default was Due to Excusable Neglect

The fifth and sixth *Eitel* factors require the Court to determine whether it is likely that there would be a dispute as to material facts and whether Defendants' failure to litigate is due to excusable neglect.  There is no evidence of a factual dispute, since the Remaining Defendants are deemed to have admitted to the well-pled facts in the Complaint, and because Plaintiffs' have provided evidence supporting the infringement allegations, (Compl. Exs. A, G-1).  There is also no indication of the Remaining Defendants' excusable neglect, because they have failed to appear altogether despite acknowledging receipt of the Complaint.  (Todd Malynn Decl. ¶¶ 2–3; *id.* Exs. 1, 2.) These factors weigh in favor of default.

### 7. The Public Policy Favoring Decisions on the Merits

Because public policy dictates that courts prefer to rule on the merits, this factor will always weigh against granting a motion for default judgment.  Nonetheless, the Remaining Defendants' choice not to defend itself renders a decision on the merits "impractical, if not impossible."  *PepsiCo Inc.*, 238 F. Supp. 2d at 1177.  Since the other *Eitel* factors all weigh in favor of granting default judgment here, the Court will exercise its discretion to grant Plaintiffs' motion for default judgment.

//
//
//

### B.  Relief Sought

Once a court concludes that default judgment is appropriate, it must determine what damages or other relief is warranted.  Plaintiffs carry the burden of proving up their damages and requests for other relief.  *Bd. of Trustees of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005).

### 1.  Injunctive Relief

Plaintiffs seek an injunction to prevent the Remaining Defendants from "continuing to interfere with Plaintiffs' distribution agreements, from defacing or removing identification codes from Harmony Goods, from infringing upon Plaintiffs' trademarks and copyrights or otherwise confusing consumers by holding themselves out as an authorized distributor, and from selling competitive goods over the internet without proper packaging."  (MPA at 13–14.)  Injunctions are proper under 15 U.S.C. § 1116(a) "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office."  The owner of a registered trademark is "generally entitled to injunctive relief because there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Microsoft Corp. v. Evans*, No. 1:06CV01745-AWI-SMS, 2007 WL 3034661, at *10 (E.D. Cal. Oct. 17, 2007), *report and recommendation adopted*, No. 106CV01745AWISMS, 2007 WL 4209368 (E.D. Cal. Nov. 28, 2007).  Injunctions are also authorized under 17 USC § 502(a) to "prevent or restrain infringement of a copyright."  Generally, "absent a great public injury, a permanent injunction will be granted when liability has been established and there is a threat of a continuing violations."  *Evans*, 2007 WL 3034661, at *11.  As Plaintiffs have demonstrated that they have viable claims for trademark infringement, copyright infringement, and unfair competition, but not tortious interference, they are entitled to injunctive relief as follows:

(a) The Remaining Defendants, their officers, agents, servants, employees, and attorneys, and all other persons acting in concert and participating with any of the foregoing, including any successor in interest or future owners of the Remaining Defendants, who receive actual notice of this Order, are restrained and enjoined from:

   1. Copying, publishing, reproducing, or otherwise using any of Plaintiffs' copyrighted works, including but not limited to Copyright Registration Nos. VA0001864773, VA0001874516, VA0001880109, VA0001880668, VA0001880698, VA0001880728, VA0001880730 to VA0001880731, VA0001880735 to VA0001880736, VA0001880740, VA0001880742, VA0001880744, VA0001880745, VA0001880747, VA0001880748, VA0001880751, VA0001880769, and VA0001904372, colorable imitations of Plaintiffs' copyrighted works, or any work of art substantially similar thereto;

   2. Reproducing, adopting, or otherwise using any of Plaintiffs' trademarks, including but not limited to the GELISH® marks (Registration Nos. 4,096,115, 3857,946), HAND & NAIL HARMONY® marks (Registration Nos. 3,750,701, 4,013,304), VITAGEL® marks (Registration Nos. 4,318,850, 4,318,869, 4,511,405), 18G® (Registration No. 4,206,100), and the ARTISTIC COLOUR GLOSS® marks (Registration Nos. 4,222,432, 4,222,433) (collectively, the "Harmony Marks"), in association with advertising, marketing, promoting, selling, offering for sale, designing, creating, manufacturing, distributing, delivering, or shipping of products that are not authentic products or have identification codes removed, or where the Remaining Defendants do not provide the same products as an authorized distributor;

3. Engaging in unfair competition by (a) failing to disclose to consumers, including but not limited to consumers visiting www.tonynail.net or any website owned or controlled by the Remaining Defendants, that (i) the Remaining Defendants are not authorized distributors of Plaintiffs, (ii) the Remaining Defendants are selling diverted products, or (iii) any warranty protection, quality control or customer support offered by Plaintiffs are not available to such consumers, or (b) not complying with all federal packaging requirements under the Hazardous Materials Transportation Act of 1975 as amended (49 U.S.C. §§ 50101 *et seq.*);

4. Using any false designation of origin, false description or representation, or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that the Remaining Defendants' activities are in any way sponsored, licensed, endorsed, authorized, affiliated, or connected with and/or originated from Plaintiffs; and

5. Facilitating, inducing, assisting, aiding, abetting, or supplying the means for any other person or business entity to engage in or perform any of the activities referred to in the above subparagraphs (1) through (4), or effecting any assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (1) through (4).

(b)   The Remaining Defendants must account for and deliver up for destruction, in accordance with § 36 of the Federal Trademark Act, 15 U.S.C. § 1118 and California's Unfair Competition Law (Bus. & Prof. Code §§ 17200 *et seq.*), all goods bearing one or more Harmony Marks in their possession, custody,

or control that include altered, obstructed, removed, or otherwise modified identification codes in violation of California Penal Code § 537e.

## 2.  Monetary Relief

Plaintiffs also seek "no less than $100,000" in statutory damages pursuant to 17 U.S.C § 504, post-judgment interest, and an unspecified amount of pre-judgment interest, attorneys' fees, and costs.  (Mot. at 2.)  The Court declines to grant any pre-judgment interest or costs, because Plaintiffs have not submitted any evidence or calculations to substantiate such requests.

In support of their request for statutory damages, Plaintiffs have provided screenshots of the fifty nail polish products on the Remaining Defendants' website which infringe twelve of their copyrights.  (Compl. Ex. G-1.)  17 U.S.C. § 504(c)(1) provides that "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just."  Further, where the infringement was committed willfully, "the court may increase the award of statutory damages to a sum of not more than $150,000."  *Id.* § 504(c)(2).  Copyright owners are entitled to statutory damages for each infringement with respect to any one work.  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990).

In determining the amount of statutory damages to be awarded under the Copyright Act, "[t]he court has wide discretion . . . constrained only by the specified maxima and minima."  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).  The

court should consider "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like . . . . Within these limitations the court's discretion and sense of justice are controlling." *Peer Int'l*, 909 F.2d at 1336 (quoting *F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 232 (1952)). "The court's discretion may be guided by a number of factors, including (1) the expenses saved and the profits reaped by defendant; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *iBASEt v. Exacore, LLC*, No. SACV1301781CJCDFMX, 2014 WL 12576816, at *4 (C.D. Cal. Mar. 24, 2014) (citing *Cartier v. Symbolix Inc.*, 544 F. Supp. 2d 316, 318 (S.D.N.Y. 2008) and *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458 (S.D.N.Y. 2001)).

Considering these factors, the Court concludes that Plaintiffs have not met their burden of showing that more than minimum statutory damages should be awarded for each case of infringement. They have not offered proof concerning the value of their copyrights or demonstrated that they lost revenue or customers. Nor is there evidence that any particular member of the public suffered harm or confusion, or that the infringement was willful. The only evidence Plaintiffs provide is a declaration from their Chief Operating Officer, Steven R. Malynn. (Steven Malynn Decl.) Malynn vaguely asserts that Plaintiffs enjoy a "tremendous amount of commercial success," (*id.* ¶ 6), "have invested substantial resources to create and enhance their goodwill and reputation," (*id.* ¶ 4), and that "[p]roduct diversion and Internet sales directly harm Plaintiffs' business, including Plaintiffs' goodwill and reputation," (*id.* ¶ 14). He also claims that it is "not practical to try to isolate the effect of one Internet website *vis-à-vis* other Internet websites, particular [sic] where, as here, the defendants simply ignore service of

summons and a complaint." (*Id.* ¶ 23.)  The Court finds that an award of $750 for each of the fifty instances of copyright infringement, for a total of $37,500, plus post-judgment interest to the extent permitted by 28 U.S.C. § 1961 and the aforementioned injunctive relief, shall have a sufficient deterrent effect in this case.

Finally, under 17 U.S.C. § 505, the court has discretion to grant attorneys' fees to the prevailing party in a copyright action.  Local Rule 55-3 provides for a schedule of attorneys' fees in default judgment cases when such relief is authorized by statute.  Under the fee schedule, where the damages award is between $10,000.01 and $50,000, attorneys are entitled to $1,200 plus 6% of the amount over $10,000.  In this case, 6% of the amount over $10,000 awarded to the Plaintiff ([$37,500 – $10,000] x .06) is $1,650, which must be added to the base amount of $1,200.  Thus, Plaintiffs' attorneys are entitled to $2,850 in fees.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for default judgment is GRANTED IN PART.  Plaintiffs are awarded injunctive relief as delineated in this Order, $37,500 in statutory damages, $2,850 in attorneys' fees, and post-judgment interest in accordance with 28 U.S.C. § 1961.  A judgment and permanent injunction are issued concurrently with this Order.

DATED:     February 28, 2017

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE